# In the United States Court of Federal Claims

No. 14-155C
(Filed:  April 22, 2014)*
*OPINION ORIGINALLY FILED UNDER SEAL ON APRIL 14, 2014.

|  |  |  |
|---|---|---|
| HUGHES GROUP, LLC, D/B/A DIA-MO CLEAN, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Bid Protest; Motion to Dismiss; Lack of Standing; Failure to Establish |
| THE UNITED STATES, | ) ) | Substantial Chance of Award |
| Defendant, | ) ) | |
| and | ) ) | |
| MANAGEMENT SERVICES NORTHWEST, INC., | ) ) ) | |
| Defendant-Intervenor. | ) ) | |

_Robert A. Klimek, Jr._, Washington, DC, for plaintiff.

_Tanya B. Koenig_, Civil Division, U.S. Department of Justice, Washington, DC, with whom were _Stuart F. Delery_, Assistant Attorney General, and _Robert E. Kirschman, Jr._, Director, Commercial Litigation Branch, for defendant.  _John S. Tobey_, Office of General Counsel, General Services Administration, Washington, DC, of counsel.

_John P. Ahlers_, Seattle, WA, for defendant-intervenor.

**FIRESTONE**, _Judge_.

# O P I N I O N

This post-award bid protest case arises out of Solicitation No. GS-10P-14-LS-D-0003 ("solicitation" or "procurement"), in which the General Services Administration ("GSA") sought janitorial and landscaping services for Federal Center South, Building 1202 in Seattle, Washington. Administrative Record ("AR") at 7. Plaintiff Hughes Group, LLC ("Hughes"), the incumbent contractor and an unsuccessful bidder for the solicitation, seeks to permanently enjoin GSA from proceeding with the award of the contract to Management Services Northwest, Inc. ("MSNW") on the principal grounds that GSA impermissibly engaged in discussions with MSNW that allowed it to make major beneficial changes to its proposal.[1]

Hughes filed the present action on February 27, 2014. MSNW, the awardee, was allowed to intervene on March 7, 2014. Pending before the court is Hughes's motion for judgment on the administrative record.[2] The United States ("the government") and MSNW have moved to dismiss Hughes's complaint under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") for lack of standing. Both the government and MSNW have also moved, in the alternative, for judgment on the administrative record pursuant to RCFC 52.1.

---

[1] Hughes also argued that GSA erroneously rated Hughes "unacceptable" for past performance. As discussed in footnote 4, infra, the record demonstrates that Hughes received a "marginal" rating for past performance. Hughes appears to have conceded this argument in its reply brief.

[2] The administrative record was filed on March 7, 2014 and was corrected on March 13, 2014. Hughes's motion to supplement the administrative record was denied on March 26, 2014.

For the reasons set forth below, the court finds that Hughes lacks standing to bring the present claim. As a result, the government's and MSNW's motions to dismiss are **GRANTED**.

## I.     STATEMENT OF FACTS

The facts in this case are undisputed and are set forth in the administrative record. As noted above, the solicitation at issue in this case is for janitorial and landscaping services, to be performed from January 1, 2014 to December 31, 2014, with three one-year options. Previously, GSA had entered into a contract with Hughes to perform some of these services, with a base year expiring on August 31, 2013 and four one-year option periods. AR 1, 160. GSA elected not to exercise Hughes's first option year, and instead elected to extend Hughes's contract for four months and rebid the contract. The new solicitation expanded the scope of the contract to include landscaping services in addition to janitorial services. AR 264-65. In deciding not to exercise the options in Hughes's contract, GSA noted that Hughes's "performance [was] a concern throughout the performance period." AR 265.

The solicitation was posted on December 6, 2013. AR 283. The award was to be made "on a best value basis utilizing the trade off source selection method." AR 434. The evaluation factors identified by GSA were (1) Technical Capability, (2) LEED-EB/Green Cleaning, (3) Relevant Past Performance, and (4) Price. Id. Technical Capability was identified as the most important factor, followed by LEED-EB/Green Cleaning and Relevant Past Performance, respectively. Id. Additionally, "[a]ll evaluation factors other than price, when combined, [were identified to be] significantly

more important than price." Id.  Under the terms of the solicitation, proposals were due to GSA by 10:00 A.M. on December 23, 2013.  AR 283.  Due to the abbreviated procurement period, the solicitation provided that "[v]endors may be restricted to a short turnaround (i.e., less than 24 hours) in responding to the Contracting Officer during any exchange/clarification period."  AR 436.  Four companies submitted bids:  MSNW, Hughes, Great Western Maintenance Corp ("GWMC"), and Triangle Maintenance and Janitorial Service ("Triangle").

Once the bids were received and preliminarily reviewed, GSA found that clarifications were necessary because offerors had organized information differently.  On Thursday, December 26, 2013 at approximately 5:30 P.M., GSA sent emails to each offeror asking for responses by no later than 9:00 A.M. on Monday, December 30, 2013.  AR 901-12.  In its email to Hughes, GSA requested that Hughes "verify that [its] submittal includes a management plan and a staffing plan" and asked Hughes to send an electronic copy of those plans by no later than 9:00 A.M. on December 30, 2013.  AR 904.  Hughes responded on December 30, 2013 at 11:00 A.M., two hours later than the response deadline.  AR 965-67.  In its email to MSNW, GSA requested that MSNW "clarify [its] Quality Control Plan" and send an electronic copy.  AR 909.[3]  MSNW

---

[3] The RFP provided that the contractor was to "establish and implement" a Quality Control Plan ("QCP") to ensure that the requirements of the contract were met.  AR 331.  The QCP was described as a "written document that specifies a system for determining whether or not cleaning services requirements are being met . . . .  The QCP is a living document and may be subject to change depending on the needs of the contract. . . .  See Section C.18 'Contractor Submittals/Deliverables Chart' to find the time frame to submit the QCP."  AR 331.  Section C.18, in turn, provides that the QCP "must be submitted 15 days prior to the start of work."  AR 335, 428.

timely responded to GSA's clarification email on December 29, 2013 with its QCP. AR 946-54. In its email to GWMC, GSA requested clarification on whether a "management plan [and] staffing plan" was available and asked GWMC to send an electronic copy. AR 901. GWMC submitted a timely response to GSA's clarification requests. AR 926-945. In its email to Triangle, GSA requested clarification that a management plan was available, but Triangle did not respond to GSA's clarification request. AR 911-12.

A Source Selection Evaluation Board consisting of three individuals, as well as the contracting officer and contract specialist, was assembled to rate the proposals for the final best value determination. AR 1059, 1099. MSNW received an overall rating of "very good" based on a "very good" rating on technical capability, an "exceptional" rating on green cleaning, and an "acceptable" rating on relevant past performance. AR 1100. MSNW provided a price proposal of $2,236,099.06. AR 1010. GWMC ranked second; it received an overall rating of "marginal" based on a "marginal" rating on technical capability, an "acceptable" rating on green cleaning, and a "marginal" rating on relevant past performance. AR 1100. GWMC's price proposal was for [     ]. AR 1109. Hughes ranked third. It received an overall rating of "marginal" based on a "marginal" rating on technical capability, an "unacceptable" rating on green cleaning, and a "marginal" rating on relevant past performance.[4] AR 1100. Hughes's price proposal was for [     ]. AR 1109. Triangle ranked fourth. It received an overall rating of "unacceptable" and [     ]. AR 1110.

---

[4] Although the technical consensus shows that Hughes received a rating of "unacceptable" for relevant past performance, the contracting officer later upgraded Hughes's rating for that factor to "marginal," as explained in her narrative. AR 1107.

Under the terms of the solicitation, "[a]ny proposal receiving an overall 'Marginal' or below rating shall not be considered for Award; however, if the Government receives limited competition with an overall 'Marginal' rating, the Government reserves the right to consider a 'Marginal' rating." AR 436. Because GSA received a proposal from MSNW, which was rated as "very good," GSA determined that GWMC, Hughes, and Triangle, which had received overall technical ratings of "marginal" or "unacceptable," were ineligible for the award, AR 1111, and awarded the contract to MSNW on December 31, 2013. AR 1135.

Hughes filed a post-award protest with the GAO on January 2, 2014. AR 1302-05. Upon receiving notice of the GAO protest, GSA issued a new task order to Hughes off the GSA Schedule to continue performance during the protest period in order to avoid a gap in janitorial services. AR 1312-76. GSA has extended Hughes's task order month-by-month, most recently on March 3, 2014. AR 1646. The current task order can be extended no later than April 14, 2014. The GAO dismissed Hughes's protest on February 19, 2014, after Hughes failed to respond to the agency report. AR 1642-45. This action was filed on February 27, 2014.

## II.   DISCUSSION

### A.   Standard of Review

As noted above, the government and MSNW both argue that Hughes lacks standing to bring this bid protest and move to dismiss pursuant to RCFC 12(b)(1). The standard of review for a motion to dismiss for lack of subject-matter jurisdiction is well settled. The plaintiff bears the burden of establishing subject-matter jurisdiction. Trusted

Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  When

considering a motion to dismiss for lack of subject-matter jurisdiction, the court assumes

the facts alleged in the complaint to be true.  Pixton v. B & B Plastics, Inc., 291 F.3d

1324, 1326 (Fed. Cir. 2002) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Similarly, the court must draw all reasonable inferences in the plaintiff's favor.  Anaheim

Gardens v. United States, 444 F.3d 1309, 1314-15 (Fed. Cir. 2006).  However, if a

motion to dismiss challenges the jurisdictional facts alleged in the complaint, the court

may consider evidence beyond the pleadings to resolve the dispute.  Reynolds v. Army

and Air Force Exchange Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).

### B.    Hughes Lacks Standing to Bring the Present Claim

The jurisdictional grant for the U.S. Court of Federal Claims to hear bid protests is

found under 28.U.S.C. § 1491(b)(1), which provides that this court

> shall have jurisdiction to render judgment on an action by an interested
> party objecting to a solicitation by a Federal agency for bids or proposals
> for a proposed contract or to a proposed award or the award of a contract or
> any alleged violation of statute or regulation in connection with a
> procurement or a proposed procurement.

Id.  The "pivotal element" of this court's subject-matter jurisdiction is "whether a

protestor qualifies as an 'interested party'" under the statute.  RhinoCorps Ltd. Co. v.

United States, 87 Fed. Cl. 481, 485 (2009).  The Federal Circuit has stated that "an

interested party is an actual or prospective bidder whose direct economic interest would

be affected by the award of the contract."  Orion Tech., Inc. v. United States, 704 F.3d

1344, 1348 (Fed. Cir. 2013) (citing Rex Serv. Corp. v. United States, 448 F.3d 1305,

1307 (Fed. Cir. 2006)).

Since there is no dispute that Hughes is an actual bidder and thus satisfied the first prong of the interested party test, the dispute in this case centers on whether Hughes has the required "direct economic interest."  To statisfy the "direct economic interest" requirement, a protester must show that it had a "substantial chance" for award but for the alleged error in the procurement process."  <u>Info Tech. & Applications Corp. v. United States</u>, 316 F.3d 1312, 1319 (Fed. Cir. 2003).  Here, the government and MSNW argue that Hughes lacks a "direct economic interest" on the grounds that Hughes received a "marginal" rating and was determined by GSA to be ineligible for award.  The government and MSNW argue further that, even though GSA reserved the right to consider a "Marginal rating" if "it received limited competition," the solicitation did not require GSA to consider offerors who received "marginal" ratings.  Thus, they contend that Hughes cannot show that it would have a substantial chance of award.

The government and MSNW contend that, even if Hughes is correct and GSA erred by allowing MSNW to submit a QCP after proposals were due, Hughes would still lack standing.  According to the government and MSNW, Hughes cannot show that it would have a substantial chance of award because GWMC ranked above Hughes and did not have any "unacceptable" ratings, while Hughes had one "unacceptable" rating.  They argue that, in such circumstances, GWMC would be the only offeror with a substantial chance for award.

In response, Hughes argues that it has standing because, in the event that MSNW's award was not lawful, all "marginal" offerors, including GWMC and Hughes, would potentially be eligible for award.  Hughes contends that a protestor does not have to show

that, but for the alleged error, the protestor would have actually been awarded the contract.  Rather, Hughes argues, it is enough for a plaintiff to show that it would be within the "zone of active consideration" as described by this court in <u>Preferred Sys. Solutions, Inc. v. United States</u>, 110 Fed. Cl. 48, 58 (2013).  According to plaintiff, all marginal offerors in this case would be within the zone of active consideration, thus satisfying the direct economic interest requirement.  In addition, Hughes argues that, if the award to MSNW were set aside and GSA decided to rebid the contract, Hughes would have a substantial chance of award and thus demonstrates a direct economic interest, as in <u>Impresa Construzioni Geom. Domenico Garufi v. United States</u>, 238 F.3d 1324, 1333-34 (Fed. Cir. 2001)

The court finds that Hughes does not have a substantial chance of award and therefore lacks standing.  Because Hughes earned a rating of "unacceptable" for LEED-EB/Green Cleaning and "marginal" ratings for the two other evaluation factors, Hughes was excluded from consideration and could not be awarded the contract in the first instance.  Even assuming that the award to MSNW were set aside, Hughes's low ratings would preclude Hughes from having a substantial chance of award.  In the context of this best value procurement, plaintiff's "unacceptable" rating, which it does not challenge,[5] is fatal to its standing claim.  Where, as here, the other offeror with a "marginal" rating, GWMC, did not have any "unacceptable" ratings, GWMC alone—and not Hughes—is the only offeror with a substantial chance of award.  In the context of this best value

---

[5] As noted in footnote 4, <u>supra</u>, Hughes originally challenged the unacceptable rating it received for past performance. That rating was, however, changed to marginal and Hughes is no longer objecting to the rating.

solicitation where the evaluation criteria ratings were deemed significantly more important than price, Hughes, with an "unacceptable" rating for a key component of the contract, does not have a substantial chance for award.  Hughes is therefore not like the plaintiff in Preferred Solutions, where the plaintiff argued that if it were properly rated it would have had a sufficiently high rating to be considered for award.  110 Fed. Cl. at 58. Here, Hughes's rating would still not be equal to the higher-ranking GWMC.  As government counsel indicated at oral argument, if GSA were to consider an award to a marginally-rated offeror, GWMC, and not Hughes, would have the substantial chance for award.

In addition, Hughes's reliance on Impresa is unfounded.  In Impresa, the agency conceded that it would have to rebid the contract if the award were set aside and thus the plaintiff would have standing because it could compete.  238 F.3d at 1334 ("In this case, as the government has conceded at oral argument, if appellant's bid protest were allowed because of an arbitrary and capricious responsibility determination by the contracting officer, the government would be obligated to rebid the contract, and appellant could compete for the contract once again.").  In this case, there is no evidence that GSA would be required to rebid the present contract if the award to MSNW had to be set aside.  As discussed above, if the award were set aside, GWMC could be selected under the terms of the solicitation.  For this reason, Impresa does not support a finding of standing in this case.[6]

---

[6] Although the court finds that plaintiff lacks standing, the court notes that, even if plaintiff had standing, its argument on the merits is not supported.  Plaintiff argues that GSA's request for

## III.    CONCLUSION

Because Hughes lacks standing, the government's and defendant-intervenor's

motions to dismiss are **GRANTED**.  The clerk is directed to dismiss plaintiff's action for

lack of subject matter jurisdiction under RCFC 12(b)(1).

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge

---

clarification on December 26, 2013 and MSNW's submission of a document labelled "Quality
Control Plan" on December 29, 2013 constitute a revision of MSNW's proposal that provided it
a competitive advantage.  The government argues in response that, with the exception of two
sentences, the substantive plan provided to GSA on December 29, 2013 was merely a
compilation of different elements taken virtually verbatim from MSNW's original proposal.  In
support of its argument, the government identified sections of the proposal and QCP that are
substantively identical:

| Topic | Location in proposal | Location in QCP |
|---|---|---|
| Staffing plan | AR 784 | AR 947-47 |
| Training program | AR 785-86 | AR 948-949 |
| Assessments/Inspections | AR 787-789-90 | AR 950-51 |
| Procedure for resolving deficiencies and problems | AR 791 | AR 952 |
| Communication plan | AR 788 | AR 952-53 |
| Management plan | AR 783 | AR 954 |

It is clear, based on the above-cited record references, that MSNW was not given the opportunity
to revise its proposal, but instead recompiled information that it had already provided to GSA.
Unlike a discussion, in which offerors are permitted to alter their bids in response to agency
questions, this submission served only to highlight information that GSA already had.  See Info.
Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1322 (Fed. Cir. 2003) (finding that,
even where the government requests additional information, a discussion only occurs if offerors
are allowed to revise their offers).  Plaintiff's argument would elevate form above substance by
requiring the requested elements of a proposal to each be contained in individual documents,
even if the solicitation does not so require.